### ZIPP v. BARKER et al.

(Supreme Court, Appellate Division, Second Department. April 18, 1899.)

1. INJUNCTION—EASEMENTS—COVENANTS.

> A partition deed covenanted that no building should be erected on a strip between a line fixed as a building line for all the lots and the street. Subsequently the character of the neighborhood changed from residence to business property, but the value of the easement was as great for business purposes as for residence. *Held*, that the erection of a building on the strip would be enjoined.

2. SAME—WAIVER.

> Plaintiff's right to the injunction was not affected by the fact that other parties to the deed, entitled to the same rights, had waived them.

3. SAME.

> Plaintiff's right was not affected by the fact that others not sought to be enjoined had also interfered with the easement.

Appeal from special term, Kings county.

Suit by Rosa Zipp, as executrix of the will of George Zipp, deceased, against Frances E. Barker and Samuel P. Barker, executors of the will of Charles Barker, deceased, and others. From a decree for plaintiff (55 N. Y. Supp. 246), defendants appeal. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Robert H. Elder, for appellants.

Hugo Hirsh, for respondent.

GOODRICH, P. J. The plaintiff brings this action to restrain the defendants from erecting and maintaining a structure on premises at the corner of Fulton street and Elm place, in the borough of Brooklyn, which premises, she contends, are restricted to use only as a courtyard or open space. The heirs of Johannes De Bevoise were owners of a large tract of land between the southerly side of Fulton street and Livingston street, and beyond, extending from a line more than 100 feet westerly from Elm place a considerable distance easterly on Fulton street, taking in Elm place (formerly De Bevoise place), Bond street, and Hanover place. The heirs, Anna Prince, Susan Lawrence, and Margaretta Willoughby, in 1836 executed a partition deed between themselves. Annexed to the deed was a map laying out and naming the streets, with the lots consecutively numbered. The map was declared to be a part of the indenture. The original name of Elm place on that map was De Bevoise place. By this deed, partition of the tract was made of the "lots and premises with their and each of their appurtenances," and it purported to convey to Susan Lawrence, her heirs and assigns, "the several lots or subdivisions of the said tract which on the said map are designated by the several numbers, and bounded in front * * * by the several streets and places next hereinafter specified and named, to wit, * * * (among others) lots number 8 and 9 on the westerly side of De Bevoise place." These lots, by mesne conveyances, were conveyed to George Zipp, of whose will the plaintiff is executrix. The lots are 50 feet in width on Elm street, and 125 feet in depth. Lot 7

on such map was conveyed to Margaretta Willoughby, and by mesne conveyances became vested in Charles Barker, of whose will two of the defendants are executors. The defendants Weir are their lessees. Lot 7 is at the corner of Fulton street and Elm place, being 25 feet in width on Fulton street, and extending along Elm place 116 feet to the line of the plaintiff's premises. The partition deed conveyed to each grantee one-half of the streets and places delineated on the map opposite to and adjoining the lots conveyed to them respectively, to be used as public streets until closed by public authority, or the consent of such persons as may be legally authorized to close the same. There was also a mutual covenant in the deed:

"That no dwelling house, store house, or other building or structure, of any kind or description whatsoever (excepting fences), shall at any time or times hereafter be erected on any lot of ground fronting on or otherwise adjoining De Bevoise place, Bond street, northwardly of Schermerhorn street or Hanover place (as the same are laid down and designated on the aforesaid map), within the several distances hereinafter specified, from the lines or sides of said places and streets respectively,—that is to say, with regard to De Bevoise place, within fifteen feet; * * * but, on the contrary thereof, that every building or structure, of whatever kind or description, which may be erected or placed on those parts of the said lots or grounds respectively, which front upon or otherwise adjoin the said places and streets, respectively, * * * (excepting fences), shall be erected or placed on the following lines,—that is to say, in the case of De Bevoise place, on lines uniformly distant on each side forty feet from the center of said place; * * * leaving eighty feet, and no more, between the lines of the buildings fronting upon or otherwise adjoining the opposite side of De Bevoise place, * * * but without any restriction upon the right to erect and maintain fences or other ornamental inclosure along the line or lines or sides of said places and streets respectively, as such lines are respectively laid down and designated on the said map; the intent and meaning in this respect of these presents, and of the several and respective parties thereto, being, on the one hand, to insure an open space of the several widths above mentioned between the lines of the buildings fronting on or adjoining the said streets and spaces respectively, and the observance of uniformity in the location of such lines, and, on the other, to leave the several owners and proprietors, for the time being, of the said lots and premises respectively, at full liberty to inclose and improve, as courtyards or ornamental grounds, the several spaces between the fronts of such buildings and the lines of the said street and places respectively, as laid down and designated on the said map, and also that (subject to the public easement above mentioned in regard to the several streets, places, and alleys aforesaid, and subject to the above covenant in regard to the location of buildings fronting on or otherwise adjoining the street and places respectively mentioned in said covenant), each of the said parties to these presents, and the respective representatives of each of them, * * * shall and may henceforth and forever well and peaceably have, hold, use, occupy, possess, and enjoy all and singular the said land and premises, * * * without any let, hindrance, stay, disturbance, or interruption by them, the said parties, or either of them, their or either of their heirs or assigns, or by any person or persons lawfully claiming or to claim by, from, or under them or any of them."

De Bevoise place was laid down on such map as a street of 80 feet in width from the building line on each side of the place, a part of which consisted of a strip on each side of the street, 15 feet in width, denominated "courtyards," and extending from Livingston street to Fulton, a distance of about 232 feet. Many years ago, buildings were erected on all of the lots on both sides of Elm place, from Fulton street to Livingston, in conformity to the building lines shown on the map, leaving a space of 80 feet between the fronts. Some of the

owners constructed courtyards with fences in front of their buildings, but there was in no case, at the time of the original building, any encroachment on the courtyard. All of the buildings except those on the corners were built and occupied as residences. In March, 1896, the defendants, or some of them, erected a one-story structure on the courtyard strip in front of the Elm place side of their premises. This structure extends out 12 feet from the side of the building, and 49 feet in depth along Elm place, and it has been since used by the defendants Weir as a store for the sale of plants and flowers. The plaintiff contends that this is a violation of her easement and of the covenants of the partition deed, which, as she claims, run with the land. She also contends that the building in question obstructs the view from Fulton street to her building and premises, which are now devoted to business purposes. On the other hand, the defendants contend that the character of the neighborhood has become so completely altered, by the march of business and otherwise, that the premises are no longer useful for residential, but are extremely valuable for business, purposes; and that equity will no longer enforce the covenants, as that would result in a loss to all the owners. The building on lot No. 7, the corner of Fulton street and Elm place, as also the building on the opposite corner, fronted on Fulton street, and were erected and used for business purposes. There was evidence showing that the courtyard strip in front of the plaintiff's premises was worth, for building purposes, $20,000, and that in front of the defendants' premises $50,000; that the character of the street has entirely changed; and that there are several other structures on the courtyard strips on each side of the place, which are encroachments and breaches of the covenants of the partition deed.

The doctrine is well settled that the right to a specific performance of a contract by the decree of a court of equity rests in judicial discretion, and may be granted or withheld on a consideration of all the circumstances. Trustees v. Thatcher, 87 N. Y. 311; Conger v. Railroad Co., 120 N. Y. 29, 23 N. E. 383; Miles v. Iron Co., 125 N. Y. 294, 26 N. E. 261; Amerman v. Deane, 132 N. Y. 355, 30 N. E. 741. In the last case the court refused to enforce the specific performance of a covenant running with the land, and restricting the use thereof for the purpose of private residences, or prohibiting the erection of certain specified structures, for the reason that the character of the neighborhood had materially changed from what it was at the time the covenant was executed. This is familiar doctrine. But we cannot see any applicability of the principle to the covenant now under consideration. It is not a covenant against a particular class of buildings suitable to a neighborhood, but a covenant that a condition should be maintained which is just as valuable for a business as for a residential neighborhood. Indeed, we are of the opinion that the value of the easement in the courtyard strip, under the particular facts of this case, is greater for business than for residential purposes. We might assume that originally the covenant had relation to the condition of the property at that time, and that the co-parceners had no thought of its coming change; but it is difficult to see why the maintenance of the easement is not more essential to the value of the

plaintiff's property as business premises than it would be if it were used as a residence. Elm place is a short street terminating at Livingston street. Most of it is already devoted to business. The plaintiff's store adjoins the lot at the corner of Fulton street, and is distant only 116 feet therefrom. There is a wide sidewalk extending from the corner to the plaintiff's premises. There is also an elevated railroad station, which brings many people to the vicinity, and at the same time somewhat impedes the view to be had of the plaintiff's premises. It is of great importance to the complete use of her premises that the front should be visible from Fulton street. A full opportunity to read signs lawfully exposed on the front of the building is of value to the plaintiff. The defendants' erection interferes with such view; and we are not prepared to say that it was not in the minds of the parties to the partition deed that the growth and extension of business might change the character of the neighborhood. At all events, the plaintiff obtained an easement to light and air and unobstructed view, and with this easement a court of equity will not interfere or permit interference by others who are privies to the covenant.

The defendants contend that it was error to exclude a paper signed by all except two of the owners of property on Elm place, to show that such persons desired to use the courtyard space free from the restriction of the covenant. The exclusion was proper. It is too plain for argument that no such consent could affect the plaintiff's rights, even if all except herself had assented thereto.

Nor does it matter that other property owners have encroached upon the strip and interfered with the easement,—even some of those deriving title through the same line of grant as the plaintiff. It may be that the plaintiff feels herself sufficiently burdened with one action, and awaits the decision of that before commencing others.

This covenant has twice received interpretation at special term,—once in an action relative to Bond street, in 1891, when, in an unpublished opinion delivered by Mr. Justice Cullen, certain erections on Bond street were enjoined; and in 1890, in another action brought by the plaintiff's testator against the persons owning the fee of the corner now under consideration, when the city court of Brooklyn enjoined the erection of structures claimed to be in violation of the covenant. It may be added that the defendants had notice of this latter decision when they began the erection of the structure of which the plaintiff complains.

We are clearly of opinion that the judgment should be affirmed.

Judgment affirmed, with costs. All concur.