ADAMS v. HOWELL.

(Supreme Court, Equity Term, Erie County.  December, 1907.)

1. COVENANTS—CONSTRUCTION—RESTRICTIONS ON USE OF REAL PROPERTY—BUILDINGS.

A covenant in a deed to land, given prior to the subdivision thereof, that no dwelling house should be erected thereon nearer than 25 feet to the street line, applies to a corner lot, one side of which is a street not forming a part of the tract conveyed, and prohibited the erection on the rear of such lot of a house facing on such side street within 25 feet of the line thereof.

2. SAME.

Steps projecting about 4 feet beyond the front line of a dwelling house were not a part thereof, within the meaning of a covenant prohibiting the erection of a dwelling house on the property within a certain distance of the front street line.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Covenants, § 50.]

3. INJUNCTION—BREACH OF COVENANT.

Equity will prevent substantial violation by defendant of a covenant in a deed against the erection of a dwelling house on the property within a certain distance of the front street line, although plaintiff may himself have been guilty of some unsubstantial violation of the covenant.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 127, 129.]

4. SAME.

Equity will enforce building restrictions, unless there has been such a change in the neighborhood that the original purpose and design of the covenants have been broken up and the reason for enforcing them has ceased to exist; and this, although there may have been violations of the restrictions by other parties.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, §§ 127, 129.]

Action by Annie W. Adams against David Howell.  Judgment for plaintiff.

Alfred Hurrell, for plaintiff.
Willis J. Benedict, for defendant.

WHEELER, J.  The plaintiff seeks to restrain the violation by the defendant of certain building restrictions contained in a deed given by the Buffalo Cement Company to Thorne & Angell in 1889, conveying a large tract of land bounded on the north by the south line of Amherst street.  This conveyance contained the following conditions and restrictions:

"The parties of the second part [Thorne & Angell meaning], their heirs and assigns, further agree to lay out all the lands and premises conveyed by this deed and one from James Tillinghast, executed contemporaneously herewith, and included within the green border lines on the plan and maps thereof hereto attached, into blocks and streets according to said plans and maps, to set out shade trees upon, lay sidewalks on, and grade the streets so laid out and indicated on said map, within one year from the date of this conveyance, and before December 1, 1890, and to construct such sewers, both as to size and grade, as the City Engineer may indicate.  The parties of the second part further agree for themselves and their heirs and assigns that the said land shall be subdivided, sold, and used in lots of not less than forty (40) feet frontage on all the said streets, and not exceeding two hundred fifty (250) feet in depth, and agree that no part of said land shall be used or occupied for

108 N.Y.S.—60

any trade, manufacture, saloon, or stable for hire, or in any objectionable manner whatever; that no nuisance shall be maintained or allowed by themselves or their tenants or subtenants. And for the mutual benefit of all persons now or hereafter to be interested in said land or parts thereof it is agreed that the said lands shall be used for residence and dwelling purposes. only, and the usual and natural uses connected therewith and no other; that all dwellings hereafter erected on the northerly side of Crescent avenue shall not cost less than $2,000, on the southerly side of Crescent avenue not less than $2,500, and on all other streets indicated on said plans and map not less than $3,000; that each and every dwelling house shall be erected not nearer than twenty-five (25) feet of the front street line of the lot; and that any barn on a lot adjacent to Amherst street shall be erected at least twenty (20) feet from Amherst street."

McDonald v. Spang (Sup.) 105 N. Y. Supp. 617.

These conditions and restrictions were for the benefit of all subsequent owners. The defendant owns a lot on the corner of Summit avenue and Amherst street, having a frontage of 50 feet on Summit avenue by 150 feet in depth. The plaintiff owns the lot adjoining, having a frontage of 50 feet on Summit avenue by 150 feet in depth. Both these lots form a part of the tract deeded to Thorne & Angell by the Buffalo Cement Company. The defendant began the construction of a two-family house on the rear of the lot owned by him, and purposes, unless restrained, to erect a two-family dwelling thereon, to be 39 feet wide on the Amherst street side and 35 feet deep. The foundation wall of this house is 12 feet 9 inches from Amherst street. The house is to front or face on Amherst street. The west line of said building is 109 feet from the east line of Summit avenue. The plaintiff contends the erection of this dwelling in the manner indicated is a violation of the building restrictions imposed by the Thorne & Angell deed. The defendant insists that the provisions of those restrictions are not violated, and argues in the first place that it was not the purpose of the grantors to place any restrictions as to houses fronting Amherst street. Amherst street never formed a part of the tract conveyed, but bounded it on the north; the south line of Amherst street being the north boundary of the Thorne & Angell tract. It is argued that the restrictions only apply to lots fronting streets subsequently opened and laid out by Thorne & Angell under their agreement contained in the deed to them.

We find nothing in the restrictions limiting its operation to streets other than Amherst street. The covenant reads:

"That each and every dwelling house shall be erected not nearer than twenty-five (25) feet of the front line of the lot."

The restriction was clearly intended for the benefit of the entire tract and of subdivision lots into which the tract might be cut. If, in subdividing the tract, Thorne & Angell had so laid it out that some of the lots fronted on Amherst street, we are clearly of the opinion that the restrictive covenants of the deed would have applied to them, as well as to lots fronting streets run through the middle of the tract. As we had occasion to say in an opinion handed down in another action affecting a lot in this tract:

"It was the manifest purpose and intent of these covenants to preserve and keep open a clear space between the house and the street line of 25 feet for

the purpose of light, air, and general attractiveness. The important consideration was this clear and open space between the street and the dwelling, and not that the house should be a given distance from a given line. In other words, the restriction must be construed to refer to the changed line as subsequently established, so as to carry out the manifest purpose of the grantors, and to secure to their grantees the benefits intended to be "conferred."

We therefore think the contention of the defendant that the restrictions had no application to the Amherst street frontage ought not to prevail, but that the restrictions relate to every square foot of the tract conveyed. It is argued by the defendant that, conceding the restrictions did apply to the Amherst street frontage, had the subdivisions been made to front thereon, yet as matter of fact, when the tract was surveyed and plotted by Thorne & Angell, no lots were made to front on Amherst street, but only the side lines of subdivision lots; that this is particularly true of defendant's lot; that it has a frontage of 50 feet on Summit avenue by 150 feet in depth on Amherst street; and that, so long as the defendant builds no nearer the front line of his lot than 25 feet, he is not violating the building restrictions, and no injunction will lie. It must be conceded that, as plotted by Thorne & Angell, it was contemplated that the defendant's lot should front on Summit avenue, and not on Amherst street. The defendant, however, has by his acts changed the frontage, in part at least, by converting what was originally a side line into a front line, by facing the proposed dwelling on Amherst street. We do not think it can be fairly claimed that the building restrictions stipulated for applied only to lots as originally plotted by Thorne & Angell. We had occasion to hold expressly to the contrary in McDonald v. Spang, where the original street line was changed by the widening of the street, but, notwithstanding, held houses erected on this street must stand back at least 25 feet from the line of the street as widened. Suppose that on the corner of some cross-streets in the interior of the tract defendant had owned three lots of 50 feet frontage each by 150 feet in depth, and that he had seen fit to change the subdivision by having them front on the cross-street; he would still have three lots, each with 50 feet frontage and a depth of 150 feet. The only difference would have been that they ran at right angles to their original location. The court, we think, would properly say, if an attempt were made to build on such rearranged lots nearer than 25 feet of the street line, that the purpose and intent of the restrictive covenants of the deed could not be defeated by such a subterfuge.

The only difference between the supposed case and that under consideration is the depth of the lot in question, and that can make no possible difference as to the principle to be applied. "The primary rule of interpretation of such covenants is to gather the intention of the parties from their words, by reading, not simply a single clause of the agreement, but the entire context, and, where the meaning is doubtful, by considering such surrounding circumstances as they are presumed to have considered when their minds met." Kitching v. Brown, 180 N. Y. 427, 73 N. E. 241, 70 L. R. A. 742. We think it was clearly the intent of the parties to the original deed to secure

this open space of 25 feet between the house and street line, and it is the duty of the court to enforce that agreement for the benefit of every lot owner who may have acquired title from or through the Thorne & Angell deed.

It is further contended by the defendant that the plaintiff ought not to be permitted to restrain the defendant, because she herself has violated the building restrictions relied on. This alleged violation consists in the fact that the steps to plaintiff's house project a few feet into the restricted space. They project about 4 feet into the 25-foot space. We do not think such steps can be fairly said to be a part of the house. It was held in the case of Ogontz Land Co. v. Johnson, 168 Pa. 178, 31 Atl. 1008, that while a veranda is a part of a house, within the meaning of a restriction of this kind, yet steps or ornamental projections are not violations of such restrictions. There was certainly no substantial violation of the building restrictions by the plaintiff, and equity will prevent substantial violation by a defendant, even though the plaintiff may have been guilty of some unsubstantial violation on his part. McGuire v. Caskey, 62 Ohio St. 419, 57 N. E. 53.

It is also claimed that others have not fully observed the restrictions, and that therefore the court ought not to enforce against the defendant. The stipulated facts do not disclose any change in the character of the neighborhood. It remains a most desirable residence section of the city, and the cases hold that equity will enforce building restrictions, unless there has been such a change in the neighborhood that the original purpose and design of the covenants have been broken up and the reason for enforcing them ceased to exist. Columbia v. Thacher, 87 N. Y. 311, 41 Am. Rep. 365. And this, although there have been violations by others. Zipp v. Barker, 40 App. Div. 1, 57 N. Y. Supp. 569; McDonald v. Spang (Sup.) 105 N. Y. Supp. 617.

We think the plaintiff entitled to a decree permanently enjoining the defendant from the erection of the building complained of. So ordered, with costs.