BATCHELOR v. HINKLE et al.

(Supreme Court, Appellate Division, First Department. June 4, 1909.)

1. DEEDS (§ 176*)—BUILDING RESTRICTIONS—ENFORCEMENT.

Equity will refuse to enforce a restriction of the use of property to which all property in the neighborhood is not subject, where the conditions are so changed that the restriction has become valueless to the adjacent property and onerous to the property to which it is subject, and the parties will be left to their remedy at law.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. § 546; Dec. Dig. § 176.*]

2. DEEDS (§ 171*)—RESTRICTION.

Where the owner of property filed a map thereof, reserving a strip next to the street for courtyards, and then conveyed property abutting on the widened street, and restricted his grantees in the use of the property which had been added to the street, each of the owners of property adjoining on the street acquired an easement appurtenant to his property, which the courts must protect.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 541–544; Dec. Dig. § 171.*]

3. DEEDS (§ 171*)—RESTRICTIONS.

An owner of land between designated streets filed a map thereof, reserving a strip adjoining the street for courtyards. Subsequently he and owners of adjacent property agreed that all their lands should be subject to similar restrictions. The agreement intended that the street should

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

be widened to the extent of the strip. Thereafter the owner sold parts of the land subject to such restrictions to different purchasers. *Held*, that the filing of the map and the execution of the agreement and the conveyances subject to the restrictions created an easement appurtenant to the property, and one of the purchasers could not encroach on the strip reserved.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 541–544; Dec. Dig. § 171.*]

Appeal from Special Term, New York County.

Action by Rosanna Batchelor against Eugene E. Hinkle and another. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Payson Merrill, for appellant.
James W. McElhinney, for respondents.

INGRAHAM, J.   In the year 1849 the Farmers' Loan & Trust Company was the owner of a plot of ground between Broadway and Sixth avenue and Twenty-Fifth and Twenty-Sixth streets, in the city of New York. It caused a map of this plot to be made and filed in the office of the register of the city and county of New York in the year 1848. Upon this map the land fronting on the streets is divided into lots of 25 feet by 93 feet 9 inches in depth. The land fronting on Sixth avenue is divided into lots about 20 feet in width by 75 feet in depth, and on each of the streets (Twenty-Fifth and Twenty-Sixth streets), between the lots as laid down on the maps and the streets, there is a strip of land extending from Broadway to Sixth avenue, not included within the boundaries of the lots, and which is designated on the map as "five feet in width reserved for courtyards." On the 20th of February, 1849, the Farmers' Loan & Trust Company, the owner of this block, as party of the first part, entered into a certain indenture, in which Garritt Storm was the party of the second part, and Franklin S. Kinney and Mary C., his wife, were parties of the third part. This agreement recited that the party of the first part was the owner of a block of land bounded by Broadway, Sixth avenue, Twenty-Fifth and Twenty-Sixth streets, and was also the owner of part of a block of land bounded by Broadway, Sixth avenue, Twenty-Fourth and Twenty-Fifth streets; that the party of the second part was the owner of a part of the block fronting on Twenty-Fifth street, extending from the land of the party of the first part to Broadway, and that Franklin S. Kinney, one of the parties of the third part, was the owner of part of the last-mentioned block fronting on Twenty-Fourth street; and for the purpose of rendering the said two blocks desirable locations for residences and buildings of the first class, and to prevent the use or occupation of any part of the two blocks of land for any noxious or offensive purpose whatever, each of the said parties to the agreement "doth, so far as relates to the lands which they respectively own in the said two blocks of land, grant, covenant, and agree to and with the other in manner following; that is to say:

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

That the said two blocks of land are and shall be subject to the following clauses, conditions, and covenants, namely:" That the owners and grantees thereof, their heirs and assigns, and their tenants and others occupying the said lots under them, shall not carry on, erect, establish, or permit upon the lots by them respectively owned or held any building to be used for any purposes therein specified; "and also that no building shall be erected upon the front of the lots in said two blocks which shall not be built of brick, stone, or marble, and cover the whole width of the lot, and which shall not be at least three stories high above the street, and also that the buildings to be erected on Twenty-Fourth, Twenty-Fifth, and Twenty-Sixth streets upon said two blocks shall be set back uniformly on a line five feet from the sides of the said street, respectively, and so as to form courtyards of five feet wide on each side of the said two blocks upon the said street; and also that the grants, covenants, and agreements contained herein shall not only be binding upon the parties hereto, their successors and heirs, but that the same shall run with the land and be binding upon all persons who may hereafter become interested in the said two blocks as owner, tenant, occupant, or otherwise, and may be enforced by or against any one or more of these persons as occasion may require."

This agreement was duly executed by the parties thereto, and duly recorded in the register's office of the city and county of New York. Subsequent to the execution and recording of this agreement, by deed dated December 15, 1849, recorded on August 10, 1850, the plaintiff conveyed five lots on the south side of Twenty-Sixth street to one Charles M. Connolly, which was expressly subject to the provisions of the restrictions set forth in the indenture before mentioned. These lots included the property now owned by the plaintiff, situate on the south side of Twenty-Sixth street, distant 350 feet east on Sixth avenue. All the subsequent conveyances, including that directly to the plaintiff, were also subject to the restrictions contained in the agreement of February 20, 1849. By a deed dated the same day, December 15, 1849, the Farmers' Loan & Trust Company conveyed to one Sheldon lots 23, 24, 25, 26, and 27 on the said map, commencing 175 feet east of Sixth avenue, in which is included the land now owned by the defendant. This conveyance was also expressly subject to the restrictions contained in the agreement of the 20th of February, 1849, and the various conveyances through which the defendants have acquired title were all expressly subject to that agreement. The deed under which the plaintiff acquired title was recorded on August 10, 1850 and the deed under which the defendants acquired title, although dated upon the same day as the deed under which the plaintiff claims title, was recorded on October 22, 1850. The block was subsequently improved with residences, but in all cases this agreement was observed, and all buildings upon Twenty-Sixth street set back 5 feet from the street line, reserving in front of each building a space of 5 feet which was either used as a courtyard or areaway to the building or became a part of the sidewalk.

By a deed dated May 1, 1908, and recorded June 30, 1908, the defendants became the owner in fee of a plot of land on the south side

of Twenty-Sixth street, commencing 175 feet east of Sixth avenue, being in width in front and rear 60 feet, and known by street numbers 38, 40, 42, and 44 West Twenty-Sixth street. At that time all the buildings on the south side of Twenty-Sixth street were set back from the street at least 5 feet from the street line. Thereupon the defendants commenced the construction of a tall building upon the 60 feet purchased by them, extending the said building out to the street line in violation of the express terms of this agreement of February 20, 1849, whereupon the plaintiff commenced this action, asking for an injunction to restrain the defendants from constructing or erecting on said premises any building not in conformity with the provisions of this indenture of the 20th of February, 1849. Upon the trial at the Special Term the court dismissed the complaint, and from the judgment entered thereon the plaintiff appeals.

The trial judge, while stating that this setback agreement had been for 60 years uniformly observed, came to the conclusion that, so far as modern business buildings are concerned, it is most desirable that these buildings should be set up to the street line, in order that there may be additional space in the rear for the purpose of providing light and air there, where it is most needed; that "in view of these facts, established by the evidence, it follows that the enforcement of this covenant would not only confer no permanent benefit upon the plaintiff, but would work a serious injury to the defendants, and prevent them from making the most valuable use of their property"; that "courts of equity have uniformly, in such cases, refused to interfere for the purpose of enforcing covenants, where the evidence shows that a state of things has arisen in the march of events which the parties to the agreement did not contemplate when it was made, and which would render its enforcement inequitable and unjust, resulting in injury to the defendants without any permanent benefit to the plaintiff."

With this conclusion I am unable to agree. The owner of this block of land, which includes both the plaintiff's and the defendants' property, had filed a map showing upon it a courtyard by which the street from the whole distance from Broadway to Sixth avenue was widened, and then entered into an agreement with the owner of the adjoining block under which this restriction as to the use of the five feet of the property adjoining on the street should be perpetual and should bind the property for all time to come. Here was an express reservation by which the owners of land dedicated this strip of land five feet in width for the benefit of the whole block and the adjoining blocks. There can be no question but that the owner of this land had the absolute right to dedicate it for this purpose, and had the right to enter into an agreement which would devote a certain portion of its land for the benefit of adjoining owners to a particular use. The owner of the land saw fit to do so, and then conveyed to the plaintiff's predecessor in title a portion of the land so restricted, expressly subject to the agreement which restricted the use of the property conveyed. The plaintiff's land thus being subject to the restrictions, there can be no doubt but that the remaining land of the grantor was subject to the same restriction. The grantor, having conveyed this property, could

not have been, as against the owner of land conveyed to the plaintiff, allowed to, encroach upon the restricted area. Upon the same day that the property was conveyed to the plaintiff's predecessor in title, the owner of the property conveyed to the defendants' predecessor in title the plot of ground bounded by the same street, subject to the same restriction. Each grantee took title to the property conveyed subject to the restriction as to the use of this strip of land and entitled to the beneficial use of the remainder of the strip between Broadway and Sixth avenue.

In considering agreements or covenants of this kind, there is a distinction between a restriction which relates solely to the use of buildings to be erected upon the property subject thereto, and restrictions granting, for the benefit of adjoining property, increased facilities of light, air, and access. Where an application is made to a court of equity to restrain a use of property to which all property in the neighborhood is not subject, and where the conditions have so changed that the restriction becomes valueless to the adjacent property and onerous upon the property to which it is subject, a court of equity has refused to enforce such a restriction, leaving the parties to their remedy at law; but that principle has never been applied where by a conveyance or indenture a certain part of the property has been devoted to a use which can be shared by adjoining property which belonged to the same owner, and which had been for many years improved and occupied in accordance with the mutual covenants to which all of the adjoining property is subject. Under such a reservation or covenant there has been acquired a property right which is appurtenant to the plaintiff's property, and to which the defendants' property is subject, and which cannot be destroyed without compensation.

By the map of the property filed by the Farmers' Loan & Trust Company, when owning the entire block, this strip of five feet in width on the southerly side of Twenty-Sixth street, was not included in the lots which were laid out upon the map; but there was in substance five feet added to the width of the street, and which, in effect, dedicated that five feet to be continued as a part of the street. If the owners of this block of ground had laid out an alleyway, or street, through the block, and subsequently conveyed the property with relation to the map upon which the street or alleyway had been laid out, each of the grantees would have acquired an easement in the street or alleyway thus laid out, which neither the original grantor nor one of his grantees could have closed without the consent of all the property to which such an easement was appurtenant; and I think that each of the owners of land abutting upon this strip of five feet which had been reserved on this map for courtyards, and, which was subject to the restrictive agreements made between the owners of this and the adjoining blocks, thus acquired an easement in the strip of land thus added to Twenty-Sixth street, and that there thereby became appurtenant to the plaintiff's property an easement in this whole strip of land between Broadway and Sixth avenue. There is nothing in the agreement that suggests that it was the intention of the parties to re-

strict the right granted or acquired to the use of the property upon the street for private residences. The agreement recited that it was entered into for the purpose of rendering the two blocks of land a desirable location for residences and buildings of the first class—not for residences alone. What was clearly intended was that the street should be widened to the extent of five feet, for the benefit of the buildings on the street, and it seems obvious that, the higher the buildings erected upon the adjacent property, the more important it becomes that the street in front should be wider than that contemplated when the city streets were laid out.

We are not dealing with a use of the property restricted for the benefit of adjacent owners, where the character of the locality is so changed that such a restriction becomes an incumbrance upon the property and prevents its improvement in the manner in which all the property in the neighborhood has been or is being improved. But in a case where the owner of property has dedicated a portion of it for the widening of an adjoining street, and then has conveyed his property abutting on such widened street, and restricted his grantees in the use of the property, which has been added to the street, a different principle applies; for there each of the owners of property adjoining upon the street has acquired an easement, which is appurtenant to his property and which the courts are bound to protect. This principle was recognized and applied in the case of Zipp v. Barker, 40 App. Div. 1, 57 N. Y. Supp. 569; affirmed by the Court of Appeals without opinion in 166 N. Y. 621, 59 N. E. 1133. In answering the claim by the defendant that the court would not enforce such an agreement where the use to which the property had been put in the locality had changed, the court said:

"It is not a covenant against a particular class of buildings suitable to a neighborhood, but a covenant that a condition should be maintained which is just as valuable for a business as for a residential neighborhood."

And there was also presented in that case, as is presented in this, an instrument in which most of the parties owning the property subject to the restriction desired to use the courtyard space, free from the restriction; but it was held that it was too plain for argument that no such consent could affect the plaintiff's right, even if all except herself had assented thereto.

In Korn v. Campbell, 192 N. Y. 490, 85 N. E. 687, Judge Werner, delivering the opinion of the court, states three classes of cases in which restrictive covenants can be enforced. In the first class he places those which are entered into with the design to carry out a general scheme for the improvement or development of real property under which an owner of a large plot or tract of land divides it into building lots to be sold to different purchasers for separate occupancy, by deeds which contain uniform covenants restricting the use which the several grantees may make of their premises—a class which, I think, embraces the present case. There the judge said:

"In such cases the covenant is enforceable by any grantee, as against any other, upon the theory that there is a mutuality of covenant and consideration which binds each and gives to each the appropriate remedy. Such covenants are entered into by the grantees for their mutual protection and benefit, and

**117 NEW YORK SUPPLEMENT.**                    (Sup. Ct.

the consideration therefor lies in the fact that the diminution in the value of a lot burdened with restrictions is partly or wholly offset by the easement in its value due to similar restrictions upon all the other lots in the same tract."

In no case to which our attention has been called· has it been held that such a covenant would not be enforced simply because one or more of the owners of property subject to it desired to use their property in a way inconsistent with it. In Roth v. Jung, 79 App. Div. 1, 79 N. Y. Supp. 822, it was held that a covenant, which provided that "only dwelling houses shall be built upon said premises, * * * and that any house or erection that shall be placed upon said premises shall be set or placed back at least 20 feet from the line of the street on which the same shall be placed," would not be enforced because there was a change in the character of the location had no application, because it clearly appeared that the restrictive covenant was solely aimed at maintaining the residential character in the neighborhood, and that the provision about setting back the buildings upon the street had relation solely to dwelling houses, and when the locality had become unsuitable for dwelling purposes a court of equity would not enforce the restriction—a very different case from that here presented.

In all the cases relied upon by the defendant, the sole question discussed was as to whether or not the court would specifically enforce a restrictive covenant. It is quite impossible to reconcile all that has been said in the cases that have discussed the subject, and it will not be attempted. By the filing of the map, the execution of the agreement with the owner of the adjoining block, and the conveyance of the lot subject to the restrictions contained in that agreement there was created an easement which was appurtenant to the plaintiff's property in this strip of five feet, to which the defendants' property was subject and which the plaintiff is entitled to enforce; and I think, therefore, the judgment should be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.