CHARLES V. BARKER and Others, Respondents, *v.* A. I. NAMM & SON and Others, Defendants, Impleaded with THE CITY OF NEW YORK, Appellant.

Second Department, May 6, 1935.

*Edmund L. Palmieri* [*Paul Windels, Corporation Counsel, Paxton Blair* and *Nathan S. Blum* with him on the brief], for the appellant.

*Benjamin Reass* [*Emanuel Newman* and *Irving Moldauer* with him on the brief], for the respondents.

HAGARTY, J. This is an action for a declaratory judgment adjudicating the rights of the parties in and to a former courtyard situated at the southwesterly corner of Fulton street and Elm Place, Brooklyn. By order, the action was severed, so that the sole parties whose rights herein are adjudicated are the plaintiffs and the public, the latter in the person of the city defendant.

The crucial document in this case consists of a deed in partition, to which is annexed a map or diagram. That deed is dated the 13th day of July, 1836, and was made by and between Anna Prince, as party of the first part, Susan Lawrence, as party of the second part, and Samuel Augustus Willoughby and Margaretta Willoughby, as parties of the third part, under which they, as the owners of a tract of land known as the farm of Johannes Debevoise, including the property in question here, divided it among themselves. The property conveyed to the Willoughbys is adjacent to the strip here involved, which constituted a courtyard, in common with others in the entire tract, created by provision of the deed. In this deed the grantors provided that the strip in question, fifteen feet wide, should not be built upon, that is to say, " with regard to Debevoise place [now Elm place] within fifteen feet " on both sides thereof, " but without any restriction upon the right to erect and maintain fences or other ornamental enclosure along the line or lines or sides of said places and streets respectively as such lines are respectively laid down and designated on the said map, the intent and meaning in this respect of these presents and of the several and respective parties thereto being on the one hand to ensure an open space of the several widths above mentioned between the lines of the buildings fronting on or adjoining the said streets and spaces respectively and the observance of uniformity in the location of such lines, and on the other to leave the several owners and proprietors for the time being of the said lots and premises respectively at full liberty to

enclose and improve as court yards or ornamental grounds the several spaces between the fronts of such buildings and the lines of the said street and places respectively as laid down and designated on the said map."

There is no dispute that, as the document further states, the space from the center of the street on each side shall be forty feet, or eighty feet in all, between respective building lines. The map shows that such distance is eighty feet on Debevoise Place and the courtyard spaces on both sides of the place are marked out by lines. The tract itself is subdivided into lots, and each is numbered. The lot adjoining the courtyard space in question is number " 7 " and it was allotted to the Willoughbys as stated.

The city's contention seems to be that the provision above quoted created a street eighty feet in width, with certain rights in the court-yard space reserved to the grantors. The respondents' position is that the courtyard spaces were exclusive of the street itself, which was fifty feet in width, and that, subject to the limitations as to use, title to the spaces was in the adjoining lot owners. Although the status of this space is not expressly declared, it is reasonably clear that there was no intention to cede the courtyard space to the city. The courtyard spaces comprehended are described as " any lot of ground *fronting* on or otherwise *adjoining* Debevoise place " and the other named streets. The very prohibition imposed upon the owners not to utilize the space for building purposes implies that they may do so for other purposes, and the purpose of ornamentation is specifically set forth. The complexity of the language and the labored scheme unfolded is at odds with a construction in the nature of a cession of the space to the city, which could have been stated in as many words. The owners are given " the right to erect and maintain fences or other ornamental enclosure " around this courtyard space and, again, as showing the distinction between the courtyard " spaces " and the street proper, it is provided that the owners are " at full liberty to enclose and improve as court yards or ornamental grounds *the several spaces between the fronts of such buildings and the lines of the said street and places* respectively as laid down and designated on the said map."

In support of its contention the appellant cites the case of *Zipp* v. *Barker* (40 App. Div. 1; affd. without opinion, 166 N. Y. 621) as authority for the proposition that Elm Place is an eighty-foot street inclusive of the courtyard in question. That case concerned itself with the effort of Charles Barker, in 1896, to encroach upon the courtyard space in question here by building thereon a one-story structure for commercial use. Plaintiff was the owner of lots immediately to the south and also fronting on Elm Place, and

she sought an injunction on the ground that the courtyard space created in the partition deed along the entire depth of Elm Place from Fulton avenue (now Fulton street) to Livingston street served to vest in all of the lot owners, throughout its entire length on that block, private easements of light and air. This contention was sustained. There was thus nothing more involved than a question of such private easements between owners of lots apportioned under the partition deed. In passing, GOODRICH, P. J., for this court, wrote (p. 4): "Debevoise place was laid down on such map as a street of eighty feet in width from the building line on each side of the place, a part of which consisted of a strip on each side of the street fifteen feet in width, denominated 'court yards,' and extending from Livingston street to Fulton, a distance of about 232 feet. Many years ago buildings were erected on all of the lots on both sides of Elm place from Fulton street to Livingston, in conformity to the building lines shown on the map, leaving a space of eighty feet between the fronts. Some of the owners constructed court yards with fences in front of their buildings, but there was in no case at the time of the original building any encroachment on the court yard."

Of course, if this were to be accepted at its face value, it would be necessary to hold that the courtyard strip constituted part of the street. Such a statement, however, in the light of the holding was sheer dictum, as that question was not at all involved. It is true, as stated, that no buildings are to be placed on a plot of ground of eighty feet from building line to building line. The deed so expressly states. But that all of this eighty feet consists of a street does not follow and seems to be contrary to the intention of the grantors. The courtyard space, subject to the limitations and private easements described, belonged to the specific grantees, and the distinction is made plain as between such courtyards and " places," " streets," " alleys," etc.

Nor is there any question as to title of plaintiffs to the strip. The adjoining lot belonged to the Willoughbys. In addition to a strong implication in the deed that title was in the adjoining lot owners, it also provides that the Willoughbys take title not only to the lots assigned, but " also of, in and to the one-half in width of the several streets, places and alleys on the said map laid down or delineated opposite to and adjoining the said lots respectively, to be used and kept open as public streets or highways until closed or altered by public authority."

Thus title was vested as to one-half of the bed of the street, which would be inclusive of the courtyard spaces, extending from the abutting lots thereto. Title to the abutting lot is traced by complete chain to the present plaintiffs and defendant

Samuel P. Barker. In the earlier conveyances the courtyard space was not expressly included, but in 1858 this was accomplished by quitclaim deed to one Edwards Pierrepont, and the chain of title running therefrom also vests the space in question in the present plaintiffs and defendant Samuel P. Barker. For present purposes, therefore, it is unimportant as to the mode in which title was acquired. Indeed, the appellant expressly states that it does not dispute the fact that the plaintiffs may be the owners of the subsurface of the strip of land in fee. It stands on the proposition that the original partition deed constituted a cession or dedication of the courtyard space for street purposes and also that " The acts of the plaintiffs' predecessors in interest have consistently manifested an intention to treat Debevoise (Elm) Place as a street 80 feet in width, inclusive of the courts on each side."

In support of the first contention, appellant invokes authorities which are entirely inapplicable. In *Matter of Bushwick Avenue* (48 Barb. 9); *Matter of Curran* (38 App. Div. 82); *Matter of Clinton Avenue* (57 id. 166; affd. without opinion, 167 N. Y. 624) and *Linton* v. *Coupe* (138 App. Div. 518) the holding simply was that where dedication or condemnation for street purposes had in fact been accomplished, the city was empowered to permit a certain portion of the street area to be used by adjoining lot owners for courtyard purposes. In none of these cases, except *Matter of Curran* (*supra*), is there any consideration of or construction of the terms of a deed, to the end that dedication was therein intended and made, and as to the latter case the language in the deed there considered affords no analogy with that of the present partition deed. *Tallmadge* v. *East River Bank* (26 N. Y. 105), cited by appellant, is to the contrary. There, a developer sold a number of houses with a uniform setback of eight feet from the street line, from a map upon which this setback was delineated. Thereafter, he sold two more lots without restriction, but through mesne conveyances the defendant received one of them " subject to all restrictions and covenants, if any exist, in relation to keeping the court-yard perpetually open as said court-yard." In affirming an injunction restraining defendant from encroaching upon the setback for building purposes, the Court of Appeals held (p. 108): " It is very plain that this action could not be maintained on the ground that the strip of ground eight feet in width, which it was the purpose of the action to restrain the defendant from building on, had been dedicated to the public." The case turned on the question of the right to enforce mutual covenants in equity, a phase of the present action with which this appeal is not concerned. Nor has the case of *Bissell* v. *New York Central R. R. Co.* (23 N. Y. 61) any application. There, a developer

sold lots by number from a map on which he showed the lots to abut on a street. Thereafter, all of the grantees sold to the railroad company, and the successors of the developer or grantor sought possession of the bed of the street, claiming it had not been conveyed, inasmuch as lot numbers alone had been used as to abutting property. It was held, in effect, that by implication the grantees had acquired title to the center line of the proposed street and, although there had been no acceptance by the city, they had acquired private easement rights therein, each of them for its entire length, so that, for all practical purposes, the grantor had neither title nor interest therein.

In support of its second contention, the appellant sets forth certain alleged acts of the plaintiffs' predecessors in title, which, it urges, in effect constituted a practical construction on their part that the courtyard space was part of the street. It points to the fact that for many years the courtyard space was not encroached upon by buildings constructed by abutting owners, but that was in conformity with the restrictions of the partition deed. Certain of the earlier deeds affecting this and other adjacent parcels are invoked for the reason that they do not assume to convey the abutting courtyard space, and it is claimed without dispute that the city street cleaning department has consistently removed rubbish from this space, policemen of the city have patrolled thereon and pedestrians have also made use thereof. On the other hand, the respondents show that in its earlier history the courtyard spaces were uniformly fenced off, that since that time and up to the present the subsurface space of the courtyard area is used almost in its entirety and that the present structure encroaches upon the surface for about seven to eight feet. They claim to have laid the sidewalk thereon and to have kept the same in repair. From all of the proof the conclusion is inevitable that neither plaintiffs nor their predecessors recognized the alleged dedication in the partition deed. Rather, a steady, gradual change has taken place under which the old courtyards have lost their identity as such because of the pressure of congestion and business needs which have converted the area in question into part of the most important commercial and shopping district in the county of Kings. As the courtyard uses have receded, the adjoining owners have encroached thereon for business purposes without hindrance from the city, and the public as well have used part thereof as a thoroughfare and as a means of access to the place of business conducted on the abutting lot. From the time the courtyard spaces were created, there was nothing to prevent the public from walking thereon, and this was not in derogation of the rights of the grantees or adverse thereto. While

the grantees could erect fences and thus keep the public out, there was no requirement contained in the deed that they do so. Not only has there been neither formal nor implied dedication, but the essential element of acceptance on the part of the city is lacking. (*Nichols Copper Co.* v. *Connolly*, 208 App. Div. 667; affd., 240 N. Y. 596; *Johnson* v. *City of Niagara Falls*, 230 id. 77, 82, 83; *Strong* v. *City of Brooklyn*, 68 id. 1, 16; *Rozell* v. *Andrews*, 103 id. 150, 152.)

I do not understand the appellant to argue that easement rights have been acquired by prescription, but am of opinion that even if such a contention were urged it would be unavailing as the pedestrian use was not adverse, and, furthermore, the learned Special Term justice has found upon competent proof that the respondents and their predecessors in title have continuously exercised dominion over the portion of the courtyard space not built upon, not only as to subsurface use, but in laying and repairing the sidewalks on the surface.

The judgment should be affirmed, with costs.

Present — LAZANSKY, P. J., HAGARTY, TOMPKINS, DAVIS and JOHNSTON, JJ.

Judgment unanimously affirmed, with costs